GLORIA GAFFNEY and YOLANDA MARANO, trading as Counties Compressor Co., Plaintiffs, v. UNIT CRANE AND SHOVEL CORPORATION, a corporation of the State of Delaware, Defendant.

*(October* 18, 1955.)

RICHARDS, P. J., sitting.

*Morton E. Evans* and *M. Weintraub* (of Philadelphia, Pa.) for the plaintiff.

*Edmund N. Carpenter, II,* (of Richards, Layton and Finger) for the defendant.

Superior Court for New Castle County, No. 140, Civil Action, 1954.

RICHARDS, P. J.:

Defendant is the manufacturer of cranes, power shovels and other power driven equipment. It issues a bulletin in which it

describes a certain type of truck crane known as "Unit 1520T, Truck Crane", and represents that this particular type of truck crane, based upon 85 per cent of the tipping load, with a boom length of 35 feet and working radius of 10 feet, has the capacity to lift the weight of 20 tons. It sells this equipment, including the truck crane known as "Unit 1520T Truck Crane", to various distributors including Stewart Equipment Company of Philadelphia, Inc.

On August 3, 1950, plaintiffs purchased a "Unit 1520T Truck Crane", being serial No. 50206, from Stewart Equipment Company of Philadelphia, Inc., paying it the full price of $27,162, and delivery of said truck crane was made by said Stewart Equipment Company.

In making said purchase, the plaintiffs relied upon the description and representations contained in the bulletin issued by the defendant.

In fact, the plaintiffs first contacted the defendant about making the purchase of the truck crane but was referred to its distributor, Stewart Equipment Company of Philadelphia, Inc.

The affidavit of Arnold R. Corbett, vice-president of the defendant, discloses that its method of doing business is to receive orders from dealers for machinery manufactured by it; that the machine is then assembled and shipped from Milwaukee to the dealer; that the cost of the machine is billed to the dealer, charged to his account and the title transferred to him; that the transaction by which the machine reaches the hands of the user is between the dealer and the user.

Plaintiffs accepted delivery of the truck crane and used it. They contend that no opportunity was available to test it until March 31, 1952, on which date an attempt was made to lift a ladle weighing about 18 tons under conditions set forth in defendant's bulletin, but the truck crane failed to lift it. Notice of this failure was given to Stewart Equipment Company of Philadelphia, Inc. who notified the defendant. Defendant's rep-

resentative and an employee of said Stewart Equipment Company did some work on the truck crane to repair it and it was tested in the presence of defendant's representatives but again failed in the same way. Defendant continued to work on the crane in order to put it in good operating condition but was unable to make it lift 20 tons.

On November 6, 1952, plaintiff wrote to Stewart Equipment Company of Philadelphia, Inc., threatening to bring suit against it. Since that time plaintiffs have continued to use the crane and have leased it to other companies to be used.

Finally on February 16, 1954, this action was brought against the defendant, more than three years after the truck crane in question was sold by Stewart Equipment Company of Philadelphia, Inc., and delivered to the plaintiff.

It appears from the complaint, that the plaintiffs have decided to keep the truck crane in question and maintain an action against the defendant for breach of warranty, under the provisions of 6 *Delaware Code* § 769(a) (2).

This raises the question of whether the cause of action accrued at the time the sale was made, namely, August 3, 1950, or when the plaintiffs learned that the truck crane would not lift 20 tons.

Assuming for the purpose of argument that the plaintiffs and defendant are proper parties to this suit, the defendant contends that the suit is barred by the statute of limitations.

■ The contract under consideration in this case arose in the state of Pennsylvania, where the statute of limitations is six years, but there seems to be no doubt that the Delaware statute of limitations applies. This appears from the following statute:

"Where a cause of action arises outside of this State, an action can not be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the

law of the state or country where the cause of action arose, for bringing an action upon such cause of action." 10 *Del. C.* § 8120.

The Delaware statute of limitations provides:

"No action * * * based on a promise, no action based on a statute * * * shall be brought after the expiration of 3 years from the accruing of the cause of such action * * *." 10 *Del. C.* § 8106.

I have found no decisions in this state determining this question.

The decisions in this country in reference to the question when the statute of limitations begins to run against an action for breach of warranty of personal property, hold that it depends largely upon whether the warranty is present or prospective. Where the warranty is present the rule is, in the case of a warranty of quality, kind or condition, that the warranty is broken if at all, as soon as made, and the statute of limitations begins to run from that time. In a case like the one under consideration, when the warranty is as to the quality or condition of goods at the time of their sale, if the warranty is broken it is broken at the time of sale. *Woodland Oil Co. v. A. M. Byers & Co.*, 223 *Pa.* 241, 72 *A.* 518, 132 *Am. St. Rep.* 737; *E. O. Painter Fertilizer Co. v. Kil-Tone Co.*, 105 *N. J. L.* 109, 143 *A.* 332; *Peterson v. Brown*, 216 *Ark.* 709, 227 *S. W.* 2d 142; *Bancroft v. San Francisco Tool Co.*, 5 *Cal. Unrep.* 586, 47 *P.* 684; *Fairbank Canning Co. v. Metzger*, 118 *N. Y.* 260, 23 *N. E.* 372, 16 *Am. St. Rep.* 753.

The Supreme Court of this state in the case of *Mastellone v. Argo Oil Corp.*, 7 *Terry* 102, 82 *A.* 2d 379, held that ignorance of facts, in the ordinary case, is no obstacle to the operation of a statute of limitations.

In the case of *Bovay v. H. M. Byllesby & Co.*, 27 *Del. Ch.* 33, 29 *A.* 2d 801, 804, in considering a plea of the statute of limitations, the learned Chancellor stated: "Statutes of limitations are intended to prevent the enforcement of stale demands, and

are based on reasons of sound policy; they are statutes of repose, intended to exact diligence."

It must be conceded·that there are authorities which hold that where the warranty refers to something to happen or be done in the future, the statute of limitations does not begin to run until the future time is reached. *Southern California Enterprises, Inc., v. D. N. & E. Walter & Co.,* 78 *Cal. App.* 2d 750, 178 *P.* 2d 785.

█ The truck crane purchased by the plaintiffs was sold with the warranty that it had the capacity to lift the weight of twenty tons; not that it would have that capacity at some future time but at the time the sale was made.

There was nothing to prevent the plaintiffs from testing the capacity of the truck crane at the time it was purchased or any time thereafter. In fact, plaintiffs did learn that it did not have the capacity to lift the weight of twenty tons as represented, in a year and a half after it was delivered and so notified Stewart Equipment Company of Philadelphia, Inc., but failed to bring suit until February 16, 1954, which was more than three years after the time the purchase was made.

█ Plaintiffs claim that the defendant tolled the statute when its representative examined the truck crane in company with an employee of Stewart Equipment Company and attempted to repair it so that it would have the capacity to lift the required weight. There was no admission by the defendant however, that the warranty had been broken or any assurance that the truck crane would be made to conform to the warranty.

At the oral argument plaintiffs relied upon the case of *Meyer v. Packard Cleveland Motor Co.,* 106 *Ohio St.* 328, 140 *N. E.* 118, 28 *A. L. R.* 986, and have since written me a letter enlarging upon their argument. An examination of the case reveals that it has no application to the case under consideration. The Motor Company brought suit against Meyer for repairs to a truck which it had sold him. Meyer contended that the repairs

were due to certain defects in the truck at the time he purchased it in violation of certain advertisements by the Motor Company, and representations made to him at the time of sale upon which he relied. The Court held that in addition to the express warranty which appeared in the advertisement and which was made at the time of sale, there was an implied warranty that the truck was what it purported to be. The plaintiffs in this case are relying on the express warranty that the truck crane would lift 20 tons. The question of the statute of limitations was not involved.

In the case of *Heath v. Moncrief Furnace Co.*, 200 *N. C.* 377, 156 *S. E.* 920, 75 *A. L. R.* 1082, defendant contracted and agreed in writing with the plaintiff, to furnish and install a combined heating and ventilating plant in plaintiff's apartment house. The system was guaranteed to be free from all defects and flaws and to heat the building to a temperature of seventy degrees with an external temperature of ten degrees below zero. The plant was in operation in the latter part of October 1924 and on January 12, 1925, the plaintiff accepted it and paid the balance of the contract price. It failed to heat the building as the contract specified although the defendant made certain adjustments to it and repeatedly assured the plaintiff it would be made to comply with the warranty. Plaintiff brought suit on March 23, 1929. The Court held the action did not accrue at the date of the warranty, but at the date when it was determined that the plant was not free from all defects and flaws and would not heat the building as required by the contract.

It took time to thoroughly test the heating plant involved in that case, but the truck crane in the case before me could have been tested on the day of sale.

The case of *Lewey v. H. C. Fricke Coke Co.*, 166 *Pa.* 536, 31 *A.* 261, 28 *L. R. A.* 283, is also a case in which the plaintiff had no means of knowledge of damage to his property. The defendant was engaged in mining coal through openings on its own land which adjoined plaintiff's land. In 1884 defendant made a subterranean opening into the land of plaintiff and removed a quan-

tity of coal from plaintiff's land. Plaintiff did not learn that his coal had been taken by the defendant until seven years thereafter and brought suit the following year to recover its value. The Court held that the statute of limitations began to run from the time of actual discovery of the plaintiff's damage, or from the time when discovery was reasonably possible. This case is certainly not helpful to the plaintiff.

At the oral argument on this motion, plaintiffs made the novel contention that the statute of limitations should not begin to run in this state while a certain action brought in the United States District Court in Pennsylvania was pending.

Nothing was shown as to the nature of the action, the bearing, if any, which it had on this case, when it was brought or when it was finally disposed of. Nor were any authorities cited in support of their position.

I find myself unable to agree with this contention.

Being of the opinion the present action is barred by the statute of limitations, it is unnecessary for me to decide the other questions raised in support of defendant's motion.

Motion for summary judgment granted.